RAYMOND P. BOLAÑOS (SBN 142069)
AT&T SERVICES, INC., LEGAL DEP'T
430 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone:  415.268.9491
Facsimile:  415.543.0418
*raymond.bolanos@att.com*

AARON M. SHANK (*Pro Hac Vice Application to be Filed*)
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street, Suites 2800 – 3200
Columbus, Oh 43215
Telephone: 614.227.2110
Facsimile:  614.227.2100
*ashank@porterwright.com*

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEST COVINA, CALIFORNIA,<br><br>Defendant. | Case No. 2:22-cv-1642<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**AND**<br><br>**REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Complaint for Declaratory and Injunctive Relief and Request for Expedited Review Case No.

-1-

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), a limited liability company organized and existing under the laws of Delaware, complains against Defendant City of West Covina, California (the "City") and alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the laws of the United States, including the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. §§ 253 and 332 ("Act"). This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202, because an actual controversy exists.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AT&T's claims stated herein arose in this judicial district.

## INTRODUCTION

3.      AT&T seeks declaratory and injunctive relief based on the City's denial of AT&T's application for a conditional use permit (the "Application") for construction, operation, and maintenance of a stealth wireless communications facility, disguised as a eucalyptus tree, with related equipment fully screened by a masonry block wall and significant landscaping, (the "Proposed Facility"). The Proposed Facility is to be located at 3540 East Cameron Avenue, situated adjacent to two existing water tanks on private water district property in West Covina, California (the "Site"). In addition to landscaping to screen the equipment area, AT&T's Proposed Facility includes planting live eucalyptus trees at the Site.

4.     Federal law limits the ability of municipalities to block installation of facilities such as the one proposed by AT&T, based on nationwide goals of promoting widespread availability of advanced, reliable wireless services. AT&T has been trying for years to place the Proposed Facility in this portion of the City, with the goal of providing and improving wireless services in those parts of the City with inadequate wireless services in the vicinity of the Proposed Facility. The Proposed Facility is needed to close a significant gap in AT&T's wireless service in the City. The Proposed Facility is the least intrusive means to close that significant gap.

5.     The Proposed Facility will provide and improve important wireless services, including LTE service and FirstNet service to support first responder communications. AT&T has conducted a comprehensive search for appropriate sites and designs for the Proposed Facility. In addition to analyzing alternative properties, AT&T worked closely with City Staff during the application process to identify the best available location and design options.

6.     At the request of the City Planning Commission, AT&T also investigated alternative designs, including whether it could install its equipment underground at the Site. AT&T determined it was not feasible to underground its equipment and submitted to the City a statement from a professional engineer explaining why that design option was not viable.

7.     After significant efforts, including holding a community meeting and working with City Staff, AT&T verified that the Site is the best available and only viable location for closing AT&T's significant service coverage gap. City Staff

suggested design changes for the Proposed Facility at the Site, including requesting a three-trunk faux tree design, antenna socks, and additional landscaping. AT&T agreed to all of these design revision requests.

8. On the strength of AT&T's Application, the location and design of the Proposed Facility, and the parties' collaboration (which resulted in the best possible facility design), City Staff twice recommended approval of AT&T's Application.

9. Despite City Staff's support, the City ultimately denied AT&T's Application after three public hearings held over several months.

10. The City's denial of AT&T's Application violates Section 332 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332, which limits the power of municipalities to regulate deployment of telecommunications and personal wireless service facilities. The Act also forbids municipalities from denying applications without substantial evidence; forbids municipalities from acting in a manner that may prohibit or have the effect of prohibiting telecommunications and personal wireless services; and forbids discriminatory treatment in processing applications for such facilities.

11. The City has effectively prohibited AT&T's installation of telecommunications and personal wireless service facilities. The City's denial of the Application is an effective prohibition of telecommunications services and personal wireless services, is not supported by substantial evidence in the written record, and is a violation of federal law. The City has also unreasonably discriminated against AT&T by denying the Application despite having previously approved a substantially similar application from one of AT&T's competitors providing

functionally equivalent services. The City's denial is not based on substantial evidence, the City acted without jurisdiction and abused its discretion in denying AT&T's Application, and its actions were arbitrary and capricious.

## PARTIES

12.     Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in Atlanta, Georgia, with offices at locations throughout California. At all times relevant herein, AT&T has been and is qualified to do business in California. AT&T is a wireless telecommunications carrier that provides personal wireless services within the meaning of the Act.

12.     The City of West Covina is a California political subdivision organized and existing under the laws of the State of California.

## NATURE OF THE CASE

13.     By this action, AT&T seeks declaratory and injunctive relief in the form of an order compelling the City to issue forthwith a conditional use permit and all other necessary approvals and authorizations to construct, operate, and maintain the Proposed Facility.

14.     The declaratory and injunctive relief requested herein is necessary and appropriate because the City has violated the Act by effectively prohibiting AT&T from providing telecommunications services and personal wireless services in the City.

///

///

Complaint for Declaratory and Injunctive
Relief and Request for Expedited Review
Case No.                                          -5-

# THE TELECOMMUNICATIONS ACT

15.     "Congress enacted the Telecommunications Act of 1996 (TCA), 110 Stat. 56, to promote competition and higher quality in American telecommunications services and to 'encourage the rapid deployment of new telecommunications.'" *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id*. In an effort to prioritize and streamline deployment of wireless technologies on a national basis, the Act restricts the authority of state and local governments to regulate "the placement, construction, and modification of personal wireless service facilities" (47 U.S.C. § 332(c)(7)(B)).

**Effective Prohibition**

16.     The Act limits state and local governments from regulating the provision of personal wireless and telecommunications services. Among these limitations is 47 U.S.C. § 332(c)(7)(B)(i)(II), which prohibits a local government from denying an application for a wireless telecommunications facility when doing so would "prohibit or have the effect of prohibiting" the provision of wireless telecommunications services.

17.     The Federal Communications Commission ("FCC") has held that an effective prohibition under 47 U.S.C. § 332(c)(7) occurs whenever a decision of a local government "materially inhibits" wireless services. *See In the Matter of*

*California Payphone Assoc. Petition for Preemption, Etc.*, Opinion and Order, 12 FCC Rcd. 14191 (FCC rel. July 17, 1997).

18    The FCC has confirmed that a "state or local legal requirement has the effect of prohibiting telecommunications service when that legal requirement 'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, FCC 18-133, 30 FCC Rcd 9088 (September 27, 2018) ("*Infrastructure Order*"), ¶ 35. "[A]n effective prohibition occurs where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id*. at ¶ 37. The Ninth Circuit has also reaffirmed this material inhibition standard. *See City of Portland v. United States*, 969 F.3d 1020 (9th Cir. 2020).

19.    Under the FCC's material inhibition standard, the analysis of an effective prohibition "focuses on the service the provider wishes to provide, incorporating the capabilities and performance characteristics it wishes to employ, including facilities deployment to provide existing services more robustly, or at a better level of quality." *Infrastructure Order*, at n.95. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Infrastructure Order*, ¶ 37.

20. In addition, several courts, including the Ninth Circuit, have ruled that a wireless carrier may demonstrate an effective prohibition by showing there is a "significant gap" in service and the proposed installation is the "least intrusive means" of closing that gap. *See T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009); *New Cingular Wireless PCS, LLC v. County of Ventura*, No. 2:21-cv-03079-SVW-JPR (C.D. Cal. Feb. 22, 2022). If there is a "significant gap" in service and the proposed installation is the "least intrusive means" for filling that gap, a municipality must grant the permit application. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II) (local regulations "shall not prohibit or have the effect of prohibiting the provision of personal wireless services").

21. When a wireless provider presents evidence of a significant gap and the absence of a less intrusive alternative, the burden shifts to the local government to prove that a less intrusive alternative exists. *See City of Anacortes*, 572 F.3d at 998-99; *T-Mobile West Corp. v. City of Agoura Hills*, 2010 U.S. Dist. 134329 (C.D. Cal. Dec. 20, 2010). To meet this burden (and overcome the presumption in favor of federal preemption), a local government must show that another alternative is available that fills the significant gap in coverage, that the alternative is technologically feasible, and that it is less intrusive than the proposed facility. *Id.*

**Substantial Evidence Requirement**

22. State and local governments may only deny an application for a telecommunications facility based on "substantial evidence." 47 U.S.C. § 332(c)(7)(B)(iii). This means that a local government's decision must be "authorized by applicable local regulations and supported by a reasonable amount

of evidence." *Metro PCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005) (abrogated on other grounds). Thus, to deny a permit application, a local government must have specific reasons that are both consistent with the local regulations and supported by substantial evidence in the record.

**Unreasonable Discrimination**

23.     The Act also prohibits state and local governments from unreasonably discriminating among providers of functionally equivalent services. 47 U.S.C. § 332(c)(7)(B)(i)(I). A siting authority violates this provision of the Act when other providers of functionally equivalent services have been permitted to construct similar structures at similar sites in the locality. *See Metro PCS, Inc.*, 400 F.3d at 727-28.

## FACTUAL BACKGROUND

**AT&T's Need for the Proposed Facility**

24.     AT&T provides personal wireless services to its customers throughout the area relevant to this Complaint pursuant to frequency licenses issued by the FCC. When AT&T identifies a significant gap in its wireless service coverage, it investigates the nature and extent of the need for improvement and identifies ways to close that gap.

25.     AT&T has a significant service coverage gap in the City, in the vicinity of the Proposed Facility. AT&T has demonstrated this significant service coverage gap in the City's administrative proceedings by submitting coverage maps, a Radio Frequency Statement, and other record evidence.

26.    AT&T's coverage gap in LTE service is significant because the area includes hundreds of homes in residential neighborhoods, parks, schools, and other points of interest in the immediate vicinity.

27.    AT&T needs to construct the Proposed Facility to provide and improve service to this portion of the City. AT&T submitted radio frequency propagation maps as exhibits to its Radio Frequency Statement, which depict the service coverage gap that AT&T is experiencing throughout this portion of West Covina. These maps and other record evidence show that AT&T lacks adequate wireless service in the subject portion of the City, and also explain how the Proposed Facility will address that service gap. The Radio Frequency Statement explains that the "site is part of an effort to fully deploy 4G LTE technology in the area. Specifically, the proposed facility will close this service coverage gap and provide reliable 4G LTE service for AT&T customers in the affected area."

28.    The Proposed Facility will also enhance first responder communications by providing new FirstNet services on Band 14. FirstNet is the federal First Responder Network Authority, a nationwide dedicated wireless communications network for first responders. The Proposed Facility is an important part of AT&T's commitment to support public safety and will provide coverage and capacity for deployment of FirstNet.

29.    To close the service gap and provide these services, AT&T proposes to install a stealth wireless communications facility adjacent to existing water tanks and disguised as a eucalyptus tree using a three-trunk design requested by City Staff, with antennas concealed by faux foliage and covered with antenna socks.

Complaint for Declaratory and Injunctive
Relief and Request for Expedited Review
Case No.                                              -10-

Related equipment will be fully screened by a masonry block wall that will itself be covered with climbing vines. AT&T also proposes to add significant landscaping, including planting live eucalyptus trees near the Proposed Facility, as requested by the City.

**AT&T's Analysis of Alternatives**

30.    AT&T thoroughly investigated alternative sites and designs to make sure its Proposed Facility was the best available and least intrusive means for closing the service coverage gap. AT&T submitted its analysis of alternatives to the City in connection with the Application, along with additional details about the search for alternative locations, which were presented at hearings before the West Covina Planning Commission and the West Covina City Council.

31.    Section 26-685.988 of the West Covina Municipal Code ("City Code") establishes development standards and location preferences for wireless communication facilities. Section 26-685-988(c)(1) establishes a maximum height for freestanding wireless communications facilities of sixty (60) feet above grade.

32.    Section 26-685-989 of the City Code provides design standards. Section 26-685-989(c)(2) requires freestanding wireless facilities to "be stealthed to eliminate or substantially reduce their visual and aesthetic impacts from the surrounding public rights-of-way and adjacent properties." Subsection (c)(3), which provides specific design standards for freestanding wireless facilities designed as faux trees, requires those faux trees to "bear a realistic resemblance to the type of tree that it is designed after to the greatest extent possible," to maximize branch density "to the greatest extent possible for antenna stealthing purposes," and also

Complaint for Declaratory and Injunctive
Relief and Request for Expedited Review
Case No.                                    -11-

requires "'sock covers' installed over each antenna to simulate tree

branches/leaves/needles, etc. for additional stealthing."

33.     Section 26-685-989(c)(4) of the City Code requires placing accessory

support facilities in "an underground vault when located on City-owned property."

The Proposed Facility is not located on City-owned property.

34.     Section 26-685-998 of the City Code provides two findings that must

be made to approve an application for a wireless facility: (1) that the facility and

equipment "are located, designed, and screened to blend with the existing natural

environment or built surroundings so as to reduce visual impacts to the extent

feasible considering the technological requirements of the proposed

telecommunication service and the need to be compatible with neighboring

residences and the character of the community;" and (2) that the facility "blend with

any existing supporting structures and does not substantially alter the character of

the structure or local area."

35.     The Proposed Facility qualifies as a stealth facility, meets all City

Code development and design standards for a freestanding wireless facility

designed as a faux tree, and meets all the City's additional design requests. AT&T's

design will eliminate or substantially reduce visual and aesthetic impacts of the

Proposed Facility, which will bear a realistic resemblance to a eucalyptus tree, and

will have adequate branch density and sock covers to conceal the antennas.

36.     The Proposed Facility is designed, located, and screened to blend with

the existing natural and as-built environment. Its visual impacts will be reduced to

the extent feasible, when considering the technological requirements for AT&T to

Complaint for Declaratory and Injunctive
Relief and Request for Expedited Review
Case No.                                                                     -12-

close its significant service gap in the area. The stealth faux tree installation and fully concealed equipment will not substantially alter the character of the local area.

37.    Section 26-685-997(2) requires an applicant to submit a "justification study," including an analysis of alternative sites.

38.    AT&T submitted a Justification Study, and later augmented its analysis to identify alternative sites and designs in response to requests from the City and the community. AT&T also submitted a further formal Alternative Sites Analysis. Both the initial Justification Study and the additional Alternative Sites Analysis are included in the administrative record.

39.    AT&T's alternative sites analysis shows it considered six (6) candidate locations, and concluded that the Site was the only available and feasible for the Proposed Facility, and that the Site presented the only opportunity to close AT&T's significant service coverage gap. The site search was limited due to the largely residential nature of the gap area. AT&T searched for but did not identify any available collocation opportunities in the gap area. Two City-owned properties were unavailable because the City did not agree to discuss those potential siting options. Two sets of raw land private properties in the area were unavailable because they are owned by a developer who declined to lease space to AT&T. South Hills High School is located in gap area, but the School District declined interest in leasing space to AT&T. Thus, The Proposed Facility is the best available – indeed the only available – and least intrusive location from which AT&T can close its significant service coverage gap.

///

**Application Process and Hearings**

40.    On June 8, 2021, AT&T filed with the City an application for a conditional use permit (the "Application") seeking authorization to construct, operate, and maintain the Proposed Facility. The Application included evidence of AT&T's significant service coverage gap and AT&T's analysis of alternative sites to close that gap by the least intrusive means.

41.    On August 23, 2021, AT&T held a properly noticed community meeting via Zoom. No members of the public attended that meeting.

42.    The Application was scheduled for hearing before the City Planning Commission, which was duly noticed and held on October 26, 2021. Ahead of the Planning Commission hearing, City Staff prepared and published a Planning Department Staff Report ("October Staff Report"). The October Staff Report summarized the stealth nature of the Proposed Facility and explained that the Proposed Facility would meet the City's requirements regarding siting, justification for wireless facilities, and community outreach. The October Staff Report described the stealth nature of the Proposed Facility, and states that its design "will limit the visual impacts of the project and help the wireless communication facility installation integrate with the surrounding visual landscape." City Staff added that the proposed landscaping, including planting new live eucalyptus trees, will allow it "to blend with the surrounding landscape and setting." The October Staff Report also explained that the "proposed location of the telecommunications facility is both desirable and necessary to meet the demand for telecommunication service within the vicinity of the site," "the proposed use is consistent with the goal and intent of

the City's General Plan [and] does not conflict with any other plans in the city," and "the tree will blend with the surrounding landscape." Thus, the October Staff Report recommended the Planning Commission approve the Application and prepared a resolution for approval.

43.    At the outset of the Planning Commission hearing on October 26, 2021, City Staff reiterated these findings and recommended approval. During the public hearing, Planning Commissioners asked about the Site and AT&T's analysis of alternatives and AT&T's service coverage gap, and questioned whether the related equipment could be placed in an underground vault at the Site. Members of the public testified as to their concerns about the Proposed Facility's proximity to residences, speculated that property values would decrease, and questioned AT&T's service coverage gap. After multiple failed motion votes, the Planning Commission continued the hearing to December 14, 2021, and requested that AT&T (a) expand its evidence of the service coverage gap, (b) investigate feasibility of undergrounding equipment, and (c) prepare additional simulated photographs to depict the Proposed Facility from additional viewpoints.

44.    In response, and in advance of the December 14, 2021 Planning Commission hearing, AT&T prepared and submitted a Radio Frequency Statement with propagation maps to depict existing LTE service coverage and predicted LTE service coverage once the Proposed Facility is on air. AT&T obtained and submitted an engineering report explaining that undergrounding the equipment was infeasible. AT&T also prepared and submitted additional simulated photographs of the Proposed Facility as requested by the City. In addition, AT&T augmented its

alternative sites analysis and submitted a formal report to meaningfully compare the alternatives. AT&T also agreed to work on facility design, including planting live trees and adding climbing vines to address a Planning Commissioner's concern about graffiti.

45.    Ahead of the December 14, 2021 Planning Commission hearing, City Staff prepared and published a Planning Department Staff Report ("December Staff Report"). City Staff again explained that the Proposed Facility met the City's Code requirements for wireless facility siting, that the "proposed location of the telecommunications facility is both desirable and necessary to meet the demand for telecommunication service within the vicinity of the site," "the proposed use is consistent with the goal and intent of the City's General Plan [and] does not conflict with any other plans in the city," and that "the tree will blend with the surrounding landscape." The December Staff Report again summarized how the Proposed Facility would "limit the visual impact of the project," "integrate with the surrounding visual landscape," and "blend with the surrounding landscaping and setting." The December Staff Report thus again recommended the Planning Commission approve the Application.

46.    At the outset of the Planning Commission hearing on December 14, 2021, City Staff reiterated these findings and recommended approval. Public comments during the hearing focused on concerns about the location of the Proposed Facility, the aesthetic impact of the faux tree, further speculation about the effects of property values, and AT&T's need for the Proposed Facility. The Planning Commission likewise criticized AT&T's evidence of its need for the

Complaint for Declaratory and Injunctive Relief and Request for Expedited Review Case No.

-16-

Proposed Facility, despite the substantial evidence demonstrating AT&T's significant service coverage gap. The Planning Commission also found that the faux tree would not accomplish reasonable stealthing, even though the stealth and concealment elements of the Proposed Facility meet the requirements of the City's Code and the additional design requests by City Staff. On the basis of these two findings, the Planning Commission voted to deny AT&T's Application.

47.     AT&T filed a timely appeal to the West Covina City Council of the Planning Commission's decision to deny the Application.

48.     In its appeal filing, AT&T again explained its significant gap in LTE service coverage. Its appeal included substantial evidence based on industry-standard radio frequency engineering practices and industry-standard assessment tools and databases, which identified and quantified AT&T's significant gap in LTE service coverage. AT&T's appeal included signal strength propagation maps along with AT&T's engineering statement explaining the specific, quantified levels of service coverage needed to provide in-building, in-vehicle, and outdoor LTE service coverage. This evidence also showed that the specific, quantified levels of service coverage AT&T's existing network were inadequate to provide in-building LTE service throughout the entire gap area. The evidence also showed that the Proposed Facility would close the service gap by providing and improving LTE services to provide reliable LTE service throughout the gap area.

49.     On February 15, 2022, the City Council held a public hearing on AT&T's Application and appeal from the Planning Commission. AT&T presented its Application for the Proposed Facility, explained the significant service coverage

gap, and summarized AT&T's efforts to identify the most appropriate location and to develop the best possible design for the Proposed Facility.

50.     During the public hearing, several members of the public spoke against the Proposed Facility. Their objections were primarily focused on the aesthetics and purported visual impacts of the Proposed Facility.

51.     At least two Councilmembers expressed concern that the City would allow a wireless telecommunications facility in a residential area, and in voting to deny the Application they relied on a code provision from a different, nearby city that imposes a greater restriction on proximity of such facilities to residence and other property types. One Councilmember asked whether the City's code prohibits placing wireless telecommunications facilities near other utilities such as the water tanks. Even though City Staff and the City Attorney explained that the provision he was recalling is limited to certain sites in the public right-of-way and that the Site is not in the public right-of-way, the Councilmember asserted that the Proposed Facility should not be placed at the Site for that reason. One Councilmember expressed, without support, her general disagreement with the engineering finding that equipment could not be undergrounded.

52.     As to resident concerns about property values, one Councilmember stated that there was no evidence regarding effects to property values and asked City Staff to provide input on the issue. City Staff confirmed there was no study about property values in the record.

53.     As to aesthetics, the Councilmembers did not articulate any way that the Proposed Facility violated the City Code. Rather, Councilmembers stated that

the Proposed Facility would stick out like a sore thumb and questioned how the Proposed Facility would contribute to City beautification. Despite AT&T's efforts to accommodate City Staff's design requests, and even though the Proposed Facility will meet all of the City Code's requirements for a stealth facility, Councilmembers disfavored the Proposed Facility because, they said, it would not be hidden from view. One Councilmember even incorrectly asserted – twice – that the proposed equipment area would be surrounded by barbed wire.

54.    At the conclusion of the February 15, 2022 hearing, the City Council voted to deny AT&T's appeal.

55.    On or about March 1, 2022, the City issued its written letter which states that "On February 15, 2022 the City Council adopted Resolution No. 2022-17 Upholding the Planning Commission's decision and denying Conditional Use Permit No. 21-03." The March 1, 2022 letter did not provide any bases for the denial, but attached the City Council's Resolution No. 2022-17, which provides the City's reasons for denial and indicates it was approved and signed on February 15, 2022 ("Denial Resolution").

56.    Although AT&T previously requested the written denial, the City did not provide the Denial Resolution until about March 1, 2022.

57.    The Denial Resolution provides three bases for the City's denial of AT&T's Application. The first denial basis states, "[t]he applicant was not able to provide quantifiable data that demonstrated that the proposed telecommunication facility is necessary or desirable to provide a service that will contribute to the

Complaint for Declaratory and Injunctive Relief and Request for Expedited Review Case No.

-19-

general well-bring of the neighborhood. Sufficient evidence was not provided to the satisfaction of the City Council to support this finding."

58.     This first denial basis is not based on a City Code requirement, and is not based on the substantial evidence in the administrative record. AT&T indeed submitted significant details and data to describe and demonstrate its significant service coverage gap.

59.     The second denial basis in the Denial Resolution states, "[t]he wireless telecommunication facility's mono-eucalyptus [sic] will not accomplish reasonable 'stealthing' that will allow the facility to be screened and blend with the existing natural environment or built surroundings. The mono-eucalyptus, as designed, will be taller than any of the mature trees on the site and adjacent areas as demonstrated by the applicant's 'balloon test' and will be noticeably dissimilar in appearance in comparison to the other trees in the area."

60.     The City does not rely on substantial evidence for this second denial basis. The Proposed Facility meets all of the City Code development and design standards for a freestanding wireless facility designed as a faux tree, including the City's height limit and all of the City's additional design requirements and requests. The proposed design will eliminate or substantially reduce visual and aesthetic impacts of the Proposed Facility, which will bear a realistic resemblance to a eucalyptus tree to the greatest extent possible, and will have adequate branch density and antenna sock covers to conceal the antennas. As the October Staff Report and December Staff Report found, "the antennas will be hidden within the branches of the monoeucalyptus tree," "the tree will blend with the surrounding

landscape," the "proposed equipment structure will be designed to be consistent with other structures," and "will match the existing buildings in materials and color." Record evidence, including multiple simulated photographs depicting the Proposed Facility from various vantage points demonstrate that the Proposed Facility will look like a tree near other trees and two water tanks.

61.     The third denial basis in the Denial Resolution states, "[a]pplicant's Alternative Site Analysis report identifies several alternative sites which could address the gap in coverage including, but not limited to, a City-owned park adjacent to the proposed site. However, each alternative site is dismissed by applicant with a simple statement that applicant could not agree to lease terms. Applicant has not sufficiently established that the terms for leasing alternative sites were so onerous they would materially limit or inhibit applicant."

62.     For this third denial basis, the City misstates or misconstrues statements in the record and fails to consider other evidence in the administrative record regarding AT&T's comprehensive alternative analyses of sites and designs.

63.     It is incorrect that AT&T offers only a "simple statement that applicant could not agree to lease terms." Regarding the two City-owned properties, the evidence shows that the City would not agree to even discuss AT&T's proposed sites and designs, let alone specific leasing terms. Regarding the two private-property sites, the evidence shows the developer declined interest in leasing based on a desire to develop the properties for residential uses. Likewise, the evidence shows that the school district declined interest in entering negotiations for a potential site at the high school. These sites are all unavailable. At best, whether

Complaint for Declaratory and Injunctive Relief and Request for Expedited Review Case No.

-21-

either City-owned property might one day be made available is merely speculative, which renders the properties unavailable for the effective prohibition analysis. *See City of Anacortes*, 572 F.3d at 998 (holding speculative alternatives cannot be considered viable alternatives).

64.    Further, the City Code does not require the additional details the City purportedly found lacking. Section 26-685.997(2) of the City Code calls for a "justification study … indicating the rationale for the selection of the proposed site in view of the relative merits of any feasible alternative site within the service area." Again, AT&T did not merely state that it could not come to terms with the City and others; it provided in the administrative record the rationale for why those alternative locations were unavailable.

65.    The City's Denial Resolution is not supported by substantial evidence.

66.    The City did not identify any alternatives that are available, feasible, and less intrusive than the Proposed Facility.

67.    The Denial Resolution does not identify any alternative that is available, technically feasible, and less intrusive than the Proposed Facility.

68.    There are no other available alternative sites upon which AT&T can construct the Proposed Facility and remedy the significant gap in coverage.

69.    Because there are no other available sites upon which AT&T can feasibly construct the Proposed Facility, and because the City has not identified any available, technically feasible, and less intrusive alternatives by which AT&T can address its significant service coverage gap, the City has effectively prohibited AT&T from providing wireless service to close its significant coverage gap.

Complaint for Declaratory and Injunctive          -22-
Relief and Request for Expedited Review
Case No.

## FIRST COUNT
### (Effective Prohibition)
### (47 U.S.C. § 332(c)(7)(B)(i)(II))

70.    AT&T hereby incorporates by reference the allegations of paragraphs 1 through 69, inclusive, as though fully set forth herein.

71.    AT&T has a gap in service coverage in the vicinity of the Proposed Facility.

72.    AT&T's gap in service coverage in the vicinity of the Proposed Facility is significant.

73.    The Site and the Proposed Facility are the least intrusive means to close AT&T's significant gap in service coverage.

74.    AT&T undertook a thorough, good faith analysis of alternative sites for the Proposed Facility and provided the City with its comprehensive, reasoned analysis. AT&T investigated all alternative designs suggested by the City, and no other designs are available, technically feasible, and less intrusive than the Proposed Facility.

75.    Other than the Site, there is no other available site upon which AT&T can construct the Proposed Facility and remedy its significant gap in service coverage.

76.    The City has not identified any available, technically feasible, and less intrusive alternatives by which AT&T can address its significant service coverage gap.

Complaint for Declaratory and Injunctive
Relief and Request for Expedited Review
Case No.

-23-

77.     The Proposed Facility would remedy AT&T's significant service coverage gap in the vicinity of the Site by means that are the least intrusive to the values protected by the applicable City of West Covina regulations.

78.     The City did not hear or present evidence establishing that AT&T does not have a significant gap in its personal wireless service coverage.

79.     The City did not hear or present evidence establishing that the Site is not the least intrusive means to address AT&T's significant service coverage gap.

80.     The City's decision to deny the Application materially inhibits AT&T from providing and improving wireless services.

81.     The City's decision to deny the Application prohibits or has the effect of prohibiting AT&T from providing personal wireless services in the significant gap area.

82.     Accordingly, the City violated the Act, 47 U.S.C. § 332(c)(7)(B)(i)(II).

WHEREFORE, AT&T prays for judgment as set forth below.

## SECOND COUNT
### (Substantial Evidence Requirement)
### (47 U.S.C. § 332(c)(7)(B)(iii))

83.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 82, inclusive, as though fully set forth herein.

84.     The Application for the Proposed Facility satisfied all of the criteria set forth in the applicable City regulations.

85.     AT&T presented evidence to the City justifying the need for the Proposed Facility, as well as the need for a Conditional Use Permit.

86.    The stated bases for denial are contradicted by the administrative record, including AT&T's Application materials, City Staff's published reports and analyses of the Application, AT&T's appeal submittal, and evidence presented at the thee public hearings regarding the Application.

87.    The City's findings that AT&T did not demonstrate need for the Proposed Facility are contradicted by the record evidence.

88.    The City's finding that the Proposed Facility "will not accomplish reasonable 'stealthing'" and will not blend with the surroundings is unsupported by the record evidence.

89.    The City's finding that AT&T's analysis of alternatives was somehow deficient is not supported by the record evidence.

90.    The City's decision to deny the Application was not supported by substantial evidence contained in a written record as required by Section 332(c)(7)(B)(iii).

91.    Accordingly, the City violated the Act, 47 U.S.C. § 332(c)(7)(B)(iii).

WHEREFORE, AT&T prays for judgment as set forth below.

### THIRD COUNT
### (Unreasonable Discrimination)
### (47 U.S.C. § 332(c)(7)(B)(i)(I))

92.    AT&T hereby incorporates by reference the allegations of paragraphs 1 through 91, inclusive, as though fully set forth herein.

93.    The Act, 47 U.S.C. § 332(c)(7)(B)(i)(I), prohibits a local authority from unreasonably discriminating among providers of functionally equivalent services. AT&T is a wireless telecommunications carrier that provides

telecommunications services and personal wireless services within the meaning of the Act.

94.     Consistent with the City Code, AT&T's Application proposes to install the Proposed Facility stealthed by a faux eucalyptus tree design on private property. In the past, the City has granted another wireless carrier a functionally equivalent service provider to AT&T, a permit to construct a similar wireless communications facility at a similar location in the City.

95.     The City does not have a reasonable basis for treating AT&T differently in this instance.

96.     Without any reasonable or lawful basis, however, the City nevertheless treated AT&T differently than a competing provider of functionally equivalent services, which violates the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

**REQUEST FOR EXPEDITED REVIEW**

97.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 96, inclusive, as though fully set forth herein.

98.     The Act, 47 U.S.C. § 332(c)(7)(B)(v), provides:

Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to    act, commence an action in any court of competent jurisdiction. The court  shall hear and decide such action on an expedited basis.

99.     AT&T has been adversely affected by the City's denial of AT&T's Application to construct the Proposed Facility. AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the City as follows:

1.      For a declaration and judgment that the City's denial has effectively prohibited AT&T from closing a significant coverage gap in the provision of wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

2.      For a declaration and judgment that the City violated Section 332(c)(7)(B)(iii) of the Act because denial of the Application was not supported by substantial evidence contained in a written record;

3.      For a declaration and judgment that the City's denial has unreasonably discriminated against AT&T in violation of the Act, 47 U.S.C. § 332(c)(7)(B)(i)(I);

4.      For a declaration and judgment that AT&T is entitled to approval of the Proposed Facility pursuant to its Application;

5.      For a declaration and judgment that the City's actions are preempted by the Telecommunications Act of 1996 and are therefore void and invalid;

6.      For an order mandating the following:

(a) that the City grant forthwith AT&T's Conditional Use Permit consistent with AT&T's Application;

(b) that the City grant forthwith all other authorizations necessary for construction of the Proposed Facility; and

(c) that the City grant forthwith final approval of the permits for construction of the Proposed Facility;

7.    For expedited review of the matters set forth in this Complaint, as required by federal law;

8.    For an award of AT&T's costs of suit herein; and

9.    For such other and further relief as the Court may deem just and proper.

Dated:  March 12, 2020                    AT&T SERVICES, INC. LEGAL DEPT.

                                          /s/  Raymond P. Bolaños
                                   By:    _____
                                          Raymond P. Bolaños
                                          Attorneys for Plaintiff
                                          430 Bush Street, 6th Floor
                                          San Francisco, CA 94108

Complaint for Declaratory and Injunctive
Relief and Request for Expedited Review
Case No.                                  -28-