O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware Limited Liability Company<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WEST COVINA, CALIFORNIA CTM BIOMEDICAL, LLC,<br><br>Defendants. | Case No.: 2:22-cv-01642-MEMF (JCx)<br><br>**ORDER DENYING PLAINTIFF NEW CINGULAR WIRELESS PCS, LLC'S MOTIONS *IN LIMINE* [ECF NOS. 82–84], AND GRANTING IN PART DEFENDANT CITY OF WEST COVINA'S MOTIONS *IN LIMINE* [ECF NOS. 85, 87]** |

Before the Court are three (3) motions *in limine* filed by the Plaintiff New Cingular Wireless PCS, LLC (ECF Nos. 82–84), and two (2) motions *in limine* filed by the Defendant City of West Covina (ECF Nos. 85, 87). For the reasons stated herein, the Court DENIES Plaintiff's motions and GRANTS IN PART Defendant's motions as described below.

I. **Background**

   A. **Factual Background**

   Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T") provides personal wireless services to its customers, including to residents of Defendant City of West Covina, California (the "City"). In order to fill an alleged service coverage gap, AT&T submitted an application for a conditional use permit (the "Application") for the construction, operation, and maintenance of a stealth wireless communications facility (the "Proposed Facility"). The Proposed

Facility was to be disguised as a eucalyptus tree and located at 3540 East Cameron Avenue (the "Site"), situated adjacent to two existing water tanks on private water district property in the City. This case concerns whether the City properly denied AT&T's Application to build its Proposed Facility. In particular, the issue in this case is whether the denial amounted to an effective prohibition in violation of the Telecommunications Act of 1996.

### B.  Procedural History

On March 12, 2022, AT&T filed a Complaint against the City alleging three causes of action: (1) prohibiting the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II); (2) lack of substantial evidence to support denial of a request to place, construct, or modify personal wireless service facilities in violation of 47 U.S.C. § 332(c)(7)(B)(iii); and (3) unreasonable discrimination among providers of functionally equivalent services in violation of a 47 U.S.C. § 332(c)(7)(B)(i)(I). ECF No. 1. On March 8, 2023, the parties filed a joint stipulation to dismiss AT&T's Third Count for unreasonable discrimination. ECF No. 43. The Court granted the stipulation on March 21, 2023. ECF No. 51.

On March 16, 2023, the parties filed a fully briefed joint Motion for Summary Judgment, with AT&T as the moving party. ECF No. 45. The City cross-moved for partial summary judgment on the same issues raised by AT&T. *Id.* The City also filed a Request for Judicial Notice. ECF No. 45-16. The Court held oral argument on this matter on April 27, 2023. ECF No. 53. On July 10, 2023, the Court denied AT&T's Motion for Summary Judgment with respect to the First and Second Causes of Action; granted the City's Cross-Motion for Summary Judgment with respect to the Second Cause of Action but denied with respect to the First Cause of Action; and granted the City's Request for Judicial Notice. ECF No. 70 ("MSJ Order").

On August 7, 2023, Plaintiff AT&T filed three (3) motions *in limine*. *See* ECF Nos. 82–84. Oppositions to these motions were filed on August 14, 2023. ECF Nos. 90–92. On August 7, 2023, Defendant City filed two (2) motions *in limine*. *See* ECF Nos. 85, 87. Oppositions to these motions were filed on August 14, 2023. ECF Nos. 88–89.

The Court held oral argument on the motions on November 29, 2023, after issuing a tentative opinion.

II. **Applicable Law**

A. **Motions *in limine***

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party files a motion *in limine* to exclude anticipated prejudicial evidence before the evidence is introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Id.* at 41 n.4 (citation omitted). Regardless of a court's initial decision on a motion *in limine*, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

B. **Federal Rule of Civil Procedure 26**

i. FRCP 26(a)(1)

Federal Rule of Civil Procedure 26(a)(1)(A) provides that a:

> party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information ... that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . .

Fed. R. Civ. P. 26(a)(1)(A). Federal Rule of Civil Procedure 26(a)(1)(A) requires parties to provide initial disclosures to the opposing parties without awaiting a discovery request. The initial

disclosures must include a computation of each category of damages claimed by the disclosing party. Fed. R. Civ. P. 26(a)(1)(A)(iii).

While Rule 26 generally requires a party to provide a computation of such damages, emotional damages, because of their vague and unspecific nature, are oftentimes not readily amenable to computation. *See Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C).").

    ii.   FRCP 26(a)(2)

Under Federal Rule of Civil Procedure 26(a)(2), a party is required to disclose an expert witness and submit an accompanying report prepared by the witness. Fed. R. Civ. P. 26(a)(2)(A)–(B). This written report must contain, in part: (1) a complete statement of all opinions expressed by the witness and the "basis and reasons for them"; (2) the facts and data used by the witness in forming his or her opinions; and (3) the exhibits that will be used to support or summarize the opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii).

Further, absent a stipulation or a court order, expert disclosures must be made "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). "[T]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005); *see also United States v. Webb*, 115 F.3d 711, 719 n. 5 (9th Cir. 1997) *abrogated on other grounds by United States v. Espinoza-Valdez*, 889 F.3d 654 (9th Cir. 2018) *quoting* 1 Graham, § 611.3, at 819 ("The proper scope and function of rebuttal is thus refutation, which involves evidence which denies, explains, qualifies, disproves, repels, or otherwise sheds light on evidence offered by the defense[.]"); Black's *Law Dictionary* 1295 (8th ed.) (defining "rebut" as "to refute, oppose, or counteract (something) by evidence, argument, or contrary proof"); *see also U.S. v. Collins*, 90 F.3d 1420 (9th Cir. 1996) (finding the district court did not abuse its discretion by admitting rebuttal evidence of burglary to counter the adverse party's evidence). Rebuttal evidence may be used to

challenge "the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006); *see also Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief."). The scope of rebuttal evidence is within the "broad discretion" of the court. *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ("The district court has broad discretion in deciding what constitutes proper rebuttal evidence."); *see also Geders v. United States*, 425 U.S. 80, 86 (1976) ("Within limits, the judge may control the scope of rebuttal testimony[.]" (internal citations omitted)).

### C. Federal Rule of Civil Procedure 37(c)

Federal Rule of Civil Procedure 37(c) is "an 'automatic' sanction that prohibits the use of improperly disclosed evidence should a party fail to provide information or identify a witness as required by Rule 26(a) or (e). *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citing *Yeti*, 259 F.3d at 1106). The rule states that, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Implicit in Rule 37(c)(1), "Is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107. Further, "in addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard" may order payments of expenses caused by the failure, inform the jury of the failure, and impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1).

### D. Federal Rule of Evidence 401 and 402

Federal Rule of Evidence 402 explicitly prohibits the inclusion of "irrelevant" evidence. Fed. R. Evid. 402. The rule dictates that "[r]elevant evidence is admissible unless any of the following provides other: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." *Id.*

Federal Rule of Evidence 401 prescribes what evidence qualifies as relevant. Fed. R. Evid. 401. It provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the

action." *Id.* 401(a)–(b); *see also Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("Deciding whether a fact is of consequence in determining the action generally requires considering the substantive issues the case presents." (internal quotation marks omitted)). Courts have recognized that Rule 401's "basic standard of relevance . . . is a liberal one." *Crawford*, 944 F.3d at 1077.

### E. Federal Rule of Evidence 701

Under Federal Rule of Evidence 701, a lay witness may testify "in the form of an opinion" if it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. "Rule 701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). "In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation." *Lopez*, 762 F.3d at 864.

The opinion testimony of lay witnesses must be "predicated upon concrete facts within their own observation and recollection—that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts." *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) (quoting *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982)). Accordingly, "[a] lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). But a lay opinion witness "may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014).

### F. Federal Rule of Evidence 702

The personal knowledge requirement for lay witnesses does not apply to expert testimony. Fed. R. Evid. 602. Federal Rule of Evidence 702 allows a witness to testify as an expert "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue." *United States v. Alonso*, 48 F.3d 1536, 1540 (9th Cir. 1995) (quoting FED. R. EVID. 702). While Courts may reject wholly speculative or unfounded testimony, it abuses its discretion if it overlooks relevant data submitted as the foundation of an expert's remarks." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). Experts may express opinions without published support if they provide an explanation of why such publications are unavailable. *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010). This concern regarding speculation speaks to weight, not reliability. *Elosu*, 26 F.4th at 1025.

### III. Discussion

Plaintiff AT&T moves to exclude at trial (1) Ben Levitan as an expert witness (ECF No. 82), (2) evidence not relevant to determine the least intrusive means to address AT&T's service coverage needs and objectives (ECF No. 83), and (3) evidence of AT&T's approximate outdoor service coverage as depicted by online coverage viewer maps (ECF No. 84).

Defendant City moves to exclude at trial (1) expert opinion testimony from persons not disclosed under Rule 26(a)(2)(B) & (D) (ECF No. 87), and (2) expert opinion testimony from Ozgur Celik (ECF No. 85).

**A. Opinions and testimony of Ben Levitan shall be permitted (AT&T's Motion *in limine* No.1, ECF No. 82).**

AT&T requests that the Court order the City to exclude their expert witness Ben Levitan. ECF No. 82 at 1. AT&T argues that Levitan's opinions are unreliable because (1) he is not qualified to opine on the relevant issues as he does not hold a college degree, never worked as a radio frequency design engineer, and has no experience acquiring potential sites for wireless telecommunications facilities; and (2) his opinions are not based on reliable principles or methods. *Id.* at 3–5.

The City argues that (1) AT&T's arguments go to the weight of Levitan's testimony, (2) Levitan has extensive knowledge and experience to testify as an expert witness, and (3) his opinions are based on reliable information. ECF No. 90 at 1–5.

The Court DENIES the Motion. The Court finds that the witness offered is a designated expert with appropriate credentials. Defendants' arguments go towards factual disagreement, bias, and weight, but not his actual qualifications or an absence of the basis for opinions.

### B. Evidence of alternative technologies, speculative alternatives, analysis of other jurisdictions' regulations, and other relative intrusiveness shall be permitted (AT&T's Motion *in limine* No. 2, ECF No. 83).

AT&T requests that the Court order the City to exclude evidence of alternative technologies, speculative alternatives, analysis of other jurisdictions' regulations, and other relative intrusiveness as not relevant to the proof of least intrusive means or barred by applicable law. ECF No. 83. AT&T argues that (1) the City's proposed alternative technologies are preempted by federal law and barred by the City's applicable regulations; (2) the City has not proven the four alternative locations are potentially available; (3) the City "must base its analysis of intrusiveness on the values codified in the City's regulations" rather than other jurisdictions' regulations; and (4) Levitan's opinion that AT&T actually wants to improve a coverage gap along Interstate 10—not the City—is speculative with no factual basis. *Id.* at 4–10.

The City argues that (1) AT&T misapplies the holding in *Anacortes* to mean the City's evidence of alternatives is inadmissible; (2) the City has not enacted a regulation that imposed control over AT&T's wireless services; (3) it is the factfinder's role to determine whether small cell technology is a viable alternative; (4) the City has not had the opportunity to show if other alternative locations are potentially available, and even so, it is AT&T's "burden to show that it has evaluated alternatives in good faith;" and (5) the City of Walnut General Plan is "specifically relevant to the environment in which the facility is proposed to be located" and there is no indication the City's decision makers relied on Walnut's regulations. *Id.* at 2–8. Further, the City argues that Levitan's opinions on the purpose of expansion of coverage in West Covina are not speculative because his opinions are based on AT&T's propagation maps that show expanded coverage on Interstate 10 from the proposed cell tower. *Id.* at 9.

/ / /

/ / /

The Court addressed in the MSJ Order the standard to be applied to the consideration of alternatives. As stated in the MSJ Order,

> When a locality rejects a prima facie showing of effective prohibition, "it must show that there are potentially available and technologically feasible alternatives." [*T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 997-98 (9th Cir. 2009).] The provider may then dispute the availability and feasibility of the alternatives proposed. *Id.*

The Court finds that AT&T has not identified any evidence sought to be presented by the City which is actually irrelevant. Rather, it appears that AT&T contends that—and the City disputes whether—the alternatives to be presented by the City are indeed available or feasible. Through cross-examination and closing argument at trial, AT&T can attempt to demonstrate that the alternatives being presented by the City should not be considered because they are not available or not feasible. Accordingly, the Motion is DENIED.

### C. Evidence of approximate outdoor coverage shall be permitted (AT&T's Motion *in limine* No. 3, ECF No. 84).

AT&T requests that the Court exclude AT&T's approximate outdoor service coverage as depicted by online coverage viewer maps because those maps depict only "a high-level approximate of outdoor [5G] coverage" that do not "tend to show whether or not AT&T has an actual 4G LTE service coverage gap" for in-building coverage. ECF No. 84 at 2–3. AT&T argues it is "improper to rely on wireless providers' online maps rather than the carrier's engineering data and propagation maps for determination of the existence of a service coverage gap." *Id.* at 2.

The City argues the online coverage viewer maps should not be excluded because AT&T's assertion that their evidence of service coverage is allegedly a better indicator of service coverage goes to the weight of the evidence, rather than the admissibility. *Id.* at 2–3. AT&T has failed to demonstrate at this stage that it would be irrational to consider online coverage maps and that they are therefore irrelevant. Rather, it appears that the parties dispute how much weight should be given to these online coverage maps and how they should be considered in determining the coverage gap. Through cross-examination and closing argument at trial, AT&T can attempt to demonstrate that despite the City's presentation of the online coverage maps, there indeed exists a service coverage gap. Accordingly, the Motion is DENIED.

**D. Opinions and testimony of AT&T witnesses Jessica Grevin, Tauseef Sharif, Young Lee, Abderrafii Achiba, and Kelli Van Eyke shall be excluded, but opinions and testimony of Johnoah Yu and Mahesh Kolur shall be permitted in part (City's Motion *in limine* No. 1, ECF No. 87).**

The City requests the Court exclude the expert opinion testimony of Jessica Grevin, Johnoah Yu, Tauseef Sharif, Mahesh Kolur, Young Lee, Abderrafii Achiba, and Kelli Van Eyke because (1) these witnesses were not identified by AT&T as providing expert testimony in its Rule 26(a)(2) expert disclosures, (2) their opinions do not fall under Federal Rule of Evidence 701 "since they are opinions based on scientific, technical and/or specialized knowledge," and (3) the witnesses were not identified in AT&T's initial disclosures under Rule 26(a)(1). ECF 87 at 3–9. The City also argues that proposed witness Kelli Van Eyke's testimony would be speculative as she "does not appear to have any specialized knowledge or qualifications" to testify to such matters. *Id.* at 9–10. Further, the City urges the Court to exclude the remaining witnesses' testimony of documents they prepared in consideration of the conditional use permit application to the City as irrelevant because "this Court has already concluded . . . there was substantial evidence before the City at the time of its decision." *Id.* at 10. At the hearing, the City pointed to the declarations filed by these witnesses at the summary judgment stage in support of its contention that the witnesses purport to present opinions.

AT&T indicates all the mentioned witnesses are lay witnesses testifying to their personal knowledge and work functions and will not be offering any expert opinions—thus, disclosures need not be made under Federal Rules of Evidence 701. *Id.* at 4–5.

For example, AT&T explains that it intends to authenticate the coverage maps through the testimony of Tauseff Sharif, Mahesh Kolur, and Abderafi Achiba, who participated in the creation of the coverage maps. ECF No. 89 at 1–2. AT&T indicates it intends to authenticate the drive test results and maps through the testimony of Young Lee, a drive test vendor. *Id.* at 2. Jessica Grevin, AT&T's site acquisition sub-vendor, is expected to testify about "potential facility locations that were evaluated" but not "regarding the feasibility of alternative locations from a construction or radio frequency perspective." *Id.* at 2. AT&T intends to offer testimony of Johnoah Yu, an engineer, regarding a report "he prepared in the scope of his employment" about the placement of equipment at AT&T's proposed facility. *Id.* at 3. AT&T indicates Yu's testimony is limited to setting a

foundation. *Id.* at 3. Lastly, Grevin, Achiba, and Kelli Van Eyke "will provide testimony based on their personal knowledge and easily observable characteristics of City-identified alternatives." *Id.* at 3.

AT&T has asserted that it does not intend to present these witnesses as experts, and at the hearing, attempted to characterize the proposed testimony of all of these witnesses as simple, common-sense "observations" or merely explaining the legends associated with some of the coverage maps. AT&T's effort largely fails.

For example, Grevin, in her declaration, asserts a number of opinions regarding the feasibility of "installing a rooftop wireless telecommunications facility in lieu of the proposed mono-eucalyptus," concluding that "such an installation is simply not practical, feasible, or possible, for any number of reasons." ECF No. 45-4 ("Grevin Decl.") ¶ 31. Despite AT&T's assertions, this is not an easily observable characteristic. Neither is her assessment that this installation would not comply with City regulations. Grevin shall not be permitted to provide any opinions; the Motion is GRANTED as to Grevin.

In her declaration, Van Eyk also essentially asserts that another one of the City's proposals is not feasible. Referring to the "wooden utility pole" at the Watercress facility, she states, "There does not appear to be sufficient space to add AT&T's proposed antennas with appropriate spacing between the power lines and AT&T's proposed antennas." ECF No. 45-12 ("Van Eyk Decl.") ¶ 8. Rather than making a "simple observation" that the pole is full, she is clearly expressing an opinion as to whether there is enough space and what spacing would be appropriate. Van Eyk shall not be permitted to provide any opinions; the Motion is GRANTED as to Van Eyk,

In his first declaration, Achiba describes certain coverage maps presented by AT&T, but in doing so, describes where they depict "reliable" coverage, thereby expressing an opinion as to what constitutes reliable coverage—a disputed issue, rather than, as AT&T asserts—simply describing the legend associated with the maps. ECF No. 45-10 ("Achiba Decl.") ¶ 11. Not only does the legend set forth numerical coverage signal strengths (instead of conclusions about what constitutes "reliable" coverage), *Id.* at ECF 7 of 12, but Rule 403 would prohibit Achiba testifying as to what the legend clearly states as an undue waste of time. This is particularly so in a bench trial where the Court is the

fact finder—the Court can readily read the legends on the maps, and the parties can submit closing briefs.

Similarly, in his second declaration, Achiba asserts that the Watercress wooden utility pole "could only provide coverage along a portion of Grand Avenue" and "[a] site at this location would not provide necessary service coverage to the residential areas or other surrounding roads in the vicinity of the Proposed Facility." ECF No. 45-11 ("Achiba Second Decl.") ¶ 7. AT&T merely asserts this is not an opinion, but it clearly is. Achiba is opining on the feasibility of Watercress and in particular what coverage such a site would provide and whether it would be "necessary service coverage." Achiba will not be permitted to provide any opinions; the Motion is GRANTED as to Achiba.

In his declaration, Sharif appears to be presenting the opinions of "AT&T radio frequency engineers," possibly including himself as to one of the contested issues—whether there is a service coverage gap. ECF No. 45-6 ("Sharif Decl.") ¶¶ 5-6. Further, in describing the coverage maps, he, like Achiba, draws conclusions about "reliable" coverage. *Id.* ¶ 8. This is also impermissible as it is an opinion. Sharif will not be permitted to provide any opinions; the Motion is GRANTED as to Sharif.

In his declaration, Lee appears only to describe the drive tests that he completed and how he depicted their results, without drawing any conclusions or otherwise expressing any opinions. ECF No. 45-9 ("Lee Decl."). The City acknowledged this, but expressed concern that he might express opinions beyond what is contained in his declaration. Lee will not be permitted to testify beyond the scope of his declaration, and he will not be permitted to provide any opinions. The Motion is therefore GRANTED in part as to Lee.

Yu and Kolur, in contrast to the other witnesses, appear only to authenticate material that was presented by AT&T as part of the conditional permit process and that is part of the administrative record. *See* ECF No. 45-7 ("Yu Decl.") ¶ 7, Ex. A; ECF No. 45-5 ("Kolur Decl.") ¶¶ 4-5, Ex. A. The City expressed concerns that, if the burden shifts to the City on the least intrusive means prong, that these witnesses may attempt to offer opinions as to that question. To the extent that AT&T wishes to use historical opinions in support of this analysis, the Court does not see any basis upon which to

prohibit that. The Court notes that Yu and Kolur will not be able to go beyond what was expressed in their prior letters, and even that may be excludable under Rule 403 as an undue waste of time if they are merely repeating what the Court can read for itself. The Motion is therefore GRANTED in part as to Yu and Kolur.

### E. Expert testimony of Ozgur Celik shall be permitted in part (City's Motion *in limine* No. 2, ECF No. 85).

The City requests that the Court exclude any untimely, new expert opinion testimony from Ozgur Celik. The City argues that AT&T included a 14-page declaration from Celik on February 13, 2023, in support of the motion for summary judgment, after the deadline to disclose expert opinions. ECF No. 85 at 2.

AT&T states it disclosed Celik as an expert witness, including a report of his opinions on November 2, 2022, timely served a rebuttal report on November 30, 2022, and the City conducted a seven hour deposition of Celik on December 5, 2022, before the expert discovery deadline. ECF 88 at 1. Further, AT&T argues that the City does not provide an "actual example of supposedly undisclosed or untimely disclosed expert opinions from Mr. Celik." *Id.* at 3.

At the hearing, the City clarified what opinions by Celik it found objectionable and late disclosed—his opinions about a 5G coverage gap. Although AT&T attempts to show that Celik testified about a 5G coverage gap in his deposition so his opinions on the 5G coverage gap are not new, this is belied by the record. In his deposition, it was clear he did not have a sense of whether and where AT&T had 5G coverage, but merely opined that if there was a coverage gap with respect to 4G, there would necessarily be a coverage gap with respect to 5G. *See* ECF No. 68 ("Ballard Decl."), Ex. 1. In his declaration, however, he attempts to augment these opinions by making assertions about the actual 5G coverage—a topic on which he disclaimed knowledge earlier. *See* ECF No. 45-8 ("Celik Decl.") ¶ 35 (explaining that the 5G service signals "are not strong enough to provide adequate service coverage to the target gap area"). Because he previously disclaimed knowledge of the actual 5G coverage, the City was obviously unable to properly depose him on his 5G coverage gap opinions. To later submit new opinions on this topic is not permissible. Celik will not be permitted to provide any opinions about 5G coverage or any 5G coverage gap beyond opining

that where there is 4G coverage gaps there is necessarily 5G coverage gaps. *See* ECF No. 68, Ex.1 at ECF page 8, lines 2-22. The Motion is therefore GRANTED in part.

### IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. AT&T's Motion *in limine* No. 1, ECF No. 82, is DENIED;
2. AT&T's Motion *in limine* No. 2, ECF No. 83, IS DENIED;
3. AT&T's Motion *in limine* No. 3, ECF No. 84, is DENIED;
4. City's Motion *in limine* No. 1, ECF No. 87, is GRANTED in part;
5. City's Motion *in limine* No. 2, ECF No. 85, is GRANTED in part;
6. The parties shall meet and confer regarding the scope of any limited factual and/or authentication testimony that AT&T wishes to present in light of the Court's decision, and to the extent that any disputes remain, file a joint report outlining those disputes by 5pm Friday, December 8.

IT IS SO ORDERED.

Dated: December 5, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge